CLERKS OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED

1/24/2024

LAURA A. AUSTIN, CLERK
BY: s/ D. AUDIA
    DEPUTY CLERK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF: **BASEMENT LOCATED AT 858 ST. CHARLES AVENUE, CHARLOTTESVILLE, VA 22902** | Case No.   3-24-mj-13 |

**AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR A SEARCH WARRANT**

I, Scott W. Medearis, being first duly sworn, hereby depose and state as follows:

### I.   INTRODUCTION

**A.   Purpose of Affidavit**

1.   On January 22, 2024, FBI Special Agent Mary Echols obtained search warrants related to the investigation described below.  Your affiant now seeks additional process related to this investigation and incorporates by reference the prior affidavit attached hereto as Exhibit A as a basis for probable cause.  (Ex. A, Affidavit of SA Mary Echols, Case Number 3:24-MJ-10.)

2.   FBI is investigating the criminal activities of Brian Lamont Turner ("TURNER"). As shown below, there is probable cause to believe that TURNER has engaged in Transportation for Purposes of Prostitution, in violation of 18 U.S.C. § 2421(a), and sex trafficking by means of force, threats, fraud, or coercion and attempted sex trafficking by means of force, threats, fraud, or coercion, in violation of 18 U.S.C. §§ 1591(a) and 1594(a), and that communications, records, and information regarding this criminal activity is stored on the cellphones utilized by TURNER.

3.   On or about January 23, 2024, FBI engaged in an arrest operation of TURNER at 858 St. Charles Avenue, Charlottesville, VA 22902 (the "**TARGET ADDRESS**").  The **TARGET ADDRESS** is located within the Western District of Virginia.  As detailed below, TURNER sequestered himself inside the address in at the basement level, along with a female. Following TURNER's arrest, the owner of the residence granted permission to search the

1

premises. In an abundance of caution, the FBI seeks Court approval to search the basement level (herein, the "**TARGET BASEMENT**") upon learning from the residence owner that TURNER recently paid cash for the use of a basement-level room at the **TARGET ADDRESS**.

4. This affidavit is submitted in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the search of the **TARGET BASEMENT**, which is further described in Attachment A, and the seizure of items described in Attachment B.

### B. Identification of the Residence

5. The property to be searched is a basement-level room (the "**TARGET BASEMENT**") located at the **TARGET ADDRESS** for the items detailed in Attachment B, as evidence of the TARGET OFFENSES.

### C. Agent Background

6. I am a Special Agent of the FBI and have been so employed since April 2009. I attended and graduated the FBI Academy in Quantico, Virginia. During my 20 weeks at the Academy, I received training on federal criminal procedure and investigative techniques to include interviewing witnesses and subjects, physical and electronic surveillance, undercover operations, and confidential human source operations, among others.

7. In my investigative experience, I have personally conducted hundreds of interviews, debriefed and operated several confidential human sources, installed and monitored electronic surveillance devise such as pole cameras and GPS tracking devices, planned and executed undercover operations, obtained and executed search and arrest warrants and monitored Title-III wire intercepts. I have also interviewed crime victims and I am generally familiar with the types of communications, lulling statements, and manipulative techniques often used by crime perpetrators to obtain money, cooperation, and other things of value. I have participated in executing numerous physical search warrants at residences and the review of seized electronic

devices to understand what types of evidence may be found therein to build and support criminal prosecutions.

### D. Sources of Information

8. The facts in this affidavit come from my personal observations and participating in the subject investigation, my training and experience, and information obtained from other agents and witnesses, which I believe to be reliable. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## II. TARGET OFFENSES

9. *See* Ex. A.

## III. PROBABLE CAUSE

### A. Overview of Investigation

10. As described in Ex. A, which is attached hereto and incorporated by reference herein, law enforcement has been investigating the suspected sex trafficking activities and transportation for purposes of prostitution of Brian Lamont TURNER. Between approximately Friday, January 19, 2024 and Tuesday, January 23, 2024, agents have been conducting surveillance of TURNER in the Lynchburg and Charlottesville, Virginia areas. Agents have observed TURNER, as well as numerous females, staying in the same room at the Quality Inn in the Lynchburg area. Agents have also observed commercial sex advertisements posted for these women and communicated with TURNER regarding those advertisements and setting up possible commercial sex dates in the Lynchburg and Charlottesville areas.

11. On January 23, 2024, investigators observed TURNER's 2010 blue Ford Mustang with TURNER near a residence at 858 St. Charles Avenue, Charlottesville, VA (the "**TARGET ADDRESS**"). Law enforcement sought to execute a federal arrest warrant at the location for

TURNER.  TURNER did not comply with FBI instructions to exit the residence and a stand-off ensued, which lasted for many hours and into the morning of January 24, 2024.

12. On the morning of January 24, 2024, TURNER was taken into custody of law enforcement after he had remained ensconced for many hours inside the **TARGET BASEMENT** at the **TARGET RESIDENCE**.  TURNER was inside this room with a female.  Other witnesses reported to law enforcement that TURNER had contacted them from within the residence during the stand-off.  One or more individuals also reported that TURNER typically kept a firearm in his possession.

13. On or about January 23 and 24, 2024, owner of the **TARGET RESIDENCE** granted law enforcement permission to enter and later to search the **TARGET RESIDENCE**.  The owner subsequently advised law enforcement that TURNER had paid several hundred dollars recently to use a room within the lower level of the home, i.e., the **TARGET BASEMENT**.  The area where TURNER and the female were sequestered was located within the **TARGET BASEMENT.**  They remained in this location during all or some of their standoff with FBI.  The owner also advised that TURNER stored belongings in this location.[1]  Your Affiant therefore requests permission to search the **TARGET BASEMENT** for evidence of the TARGET OFFENSES based on the probable cause outlined herein, along with the information incorporated from Exhibit A.

14. Based on my training, experience, and conversations with other investigators familiar with sex trafficking investigations, I know that sex traffickers often communicate with their victims about the TARGET OFFENSES through cellular communications and other

---

[1] After TURNER and the female were removed from the TARGET BASEMENT, the FBI began to search the TARGET ADDRESS with the permission of the residence owner.  In connection with learning of TURNER's payment for the use the TARGET BASEMENT, the FBI stopped its search of this room and, in abundance of caution, seeks authority from the Court to continue such search.  Of note, none of the items observed during the initial search of the **TARGET BASEMENT** have been included herein to establish a basis for probable cause.

4

electronic applications. For example, the traffickers will give instructions about the commercial sex dates, pricing, and monitor location of the victims. Communications regarding sex trafficking and transportation for the purposes of prostitution can entail information about an individual's location, money, drug access, nature of provided services, and other control-based conversations and instruction. Further, I know that sex traffickers and other individuals involved in illegal activities will often exchange cash for contraband or illicit services. Thus, I know that bulk cash, monetary instruments, and communications or records relating to the transfer of such material often provide evidence of criminal conduct, such as the TARGET OFFENSES.

15. Based on this experience as well as my participation in the instant investigation, I believe there is probable cause to believe that firearms, one or more cellphones, items used to facilitate sex trafficking, money and records related to the proceeds and facilitation of the TARGET OFFENSES, and other evidence establishing TURNER's involvement in the TARGET OFFENSES, as detailed in Attachment B, will be found in the **TARGET BASEMENT**.

### IV.   ELECTRONIC STORAGE AND FORENSIC ANALYSIS

16.   *See* Ex. A.

### V.   BIOMETRIC ORDER REQUESTED

17.   *See* Ex. A.

## CONCLUSION

18.     Based on the aforementioned information, your affiant respectfully submits that there is probable cause to believe that evidence of criminal offenses, namely, violations of 18 U.S.C. §§ 1591 and 2421(a), is located within the **TARGET BASEMENT** and that this evidence, listed in Attachment B to this affidavit, constitutes evidence, fruits, and/or instrumentalities of the foregoing criminal offenses.

## OATH

The information in this affidavit is true to the best of my knowledge and belief.

Respectfully submitted,

_/s/ Scott W. Medearis_
SCOTT W. MEDEARIS
Special Agent
Federal Bureau of Investigation

Received by reliable electronic means and sworn and attested to by telephone on January __24th__, 2024.

_____
C. KAILANI MEMMER
UNITED STATES MAGISTRATE JUDGE

6

3-24-mj-13

## ATTACHMENT A

### Description Of The Location To Be Searched:

The **TARGET BASEMENT** constitutes the lower level of the residence located at the address of 858 St. Charles Avenue, Charlottesville, VA 22902, and depicted in part in the photograph below:



1

3-24-mj-13

## ATTACHMENT B

### Particular Things to be Seized

1. All evidence relating to violations of 18 U.S.C. § 1591 (sex trafficking by force, fraud, or coercion) and 18 U.S.C. § 2421 (transportation of person to engage in illegal activity), including:

   a. Any narcotics or paraphernalia

   b. All records related to travel to include hotel receipts, hotel keys, and gas station receipts;

   c. Any money;

   d. Any weapons;

   e. All items related to commercial sex such as condoms, lubricant, and lingerie;

   f. Any clothing items bearing victim's names, nicknames, or pictures depicting victims.

2. Electronic devices, computer, GPS, or storage media, used as a means to commit the violations described above.

3. For any electronic device or storage medium whose seizure is otherwise authorized by this warrant, and any electronic device or storage medium that contains or in which is stored records or information that is otherwise called for by this warrant (hereinafter, "DEVICE"):

   a. Evidence of violations of 18 U.S.C. § 1591 and 18 U.S.C. § 2421;

   b. Evidence of who used, owned, or controlled the DEVICE at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondences;

   c. Telephone numbers of outgoing telephone calls or incoming telephone calls;

   d. Electronic address books, contact lists, telephone number lists, buddy lists, or any other software program used for the electronic compilation of contact information;

e. Stored electronic communications, or alphanumeric messages, including but not limited to emails, picture messages, text messages, instant messages, social media messages, or voicemail, whether drafted, sent, received, opened or unopened, read or unread, and/or forwarded, discussing or relating to commercial sex and/or interstate travel;

f. Types, amounts, and prices of commercial sex dates as well as dates, places, and amounts of specific transactions;

g. All GPS and location data;

h. Encrypted, deleted, and unallocated files on electronic media that contain any of the information listed above;

i. Evidence of software that would allow others to control the DEVICE, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

j. Evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the DEVICE;

k. Evidence of the times the DEVICE was used;

l. Passwords, encryption keys, and other access devices that may be necessary to access the DEVICE;

m. Documentation and manuals that may be necessary to access the DEVICE or to conduct a forensic examination of the DEVICE;

n. Records of or information about Internet Protocol addresses used by the DEVICE;

o. Records of, or information about, the DEVICE's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses;

p. Cash or other monetary instruments; and

q. Contextual information necessary to understand the evidence described in this attachment.

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant.

As used above, the terms "records" and "information" includes all forms of creation or storage, including any form of computer or electronic storage (such as hard disks or other media that can store data); any handmade form (such as writing); any mechanical form (such as printing or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies).

The term "computer" includes all types of electronic, magnetic, optical, electrochemical, or other high speed data processing devices performing logical, arithmetic, or storage functions, including desktop computers, notebook computers, mobile phones, tablets, server computers, and network hardware.

The term "storage medium" includes any physical object upon which computer data can be recorded, including external and internal hard drives, flash drives, thumb drives, micro SD cards, macro SD cards, DVDs, gaming systems, SIM cards, cellular phones capable of storage, floppy disks, compact discs, magnetic tapes, memory cards, memory chips, and other magnetic or optical media.